UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


DAVID M. DORAN,

        Plaintiff

        v.                                                      C-1-07-293

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant


This matter is before the Court upon the Report and Recommendation of the United States Magistrate Judge (doc. no. 7) and plaintiff's objections thereto (doc. no. 8). Plaintiff, a Disability Insurance claimant, brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the defendant denying plaintiff's application for disability insurance benefits. In his Report and Recommendation which follows, the Magistrate Judge concluded that the defendant's decision denying plaintiff disability insurance benefits is supported by substantial evidence and therefore recommended that the decision of the Commissioner be affirmed and this case be terminated on the docket of this Court.

# REPORT AND RECOMMENDATION

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding plaintiff "not disabled" and therefore unentitled to a period of disability and disability income benefits insurance ("DIB"). *See* Administrative Transcript ("Tr.") 291-294) (ALJ's decision).

## I.

On November 28, 2000, plaintiff filed an application for disability insurance benefits alleging a disability onset date of March 4, 1999 due to left arm and shoulder impingement, a rotator cuff tear, depression and anxiety. (Tr. 59-62). The applications were denied initially and on reconsideration. Plaintiff then requested a hearing *de novo* before an ALJ. Evidentiary hearings, at which plaintiff was represented by counsel, were held on December 19, 2002, February 6, 2003, and August 19, 2003. (Tr. 217-23, 224-37, 238-73).

On September 18, 2003, the ALJ entered his decision denying plaintiff's claim, and the Appeals Council denied plaintiff's request for review. Plaintiff then sought judicial review before the United States District Court. In July 2005 the Court issued a remand order for further proceedings. The Order provided in pertinent part:

> The ALJ is to provide an analysis regarding the inconsistencies regarding the definitions of bookkeeper and mail clerk as provided in the DOT and the VE's own personal observation. Additionally, the ALJ is to determine the later medical evidence offered by Plaintiff concerning his left shoulder and hand and determine whether Plaintiff is disabled as contemplated by the Act and whether he is entitled to benefits.

(Tr. 298-326.)

After a subsequent March 16, 2006 hearing, on June 21, 2006, the ALJ issued an unfavorable decision denying Plaintiff's application for DIB benefits. (Tr. 289-94, 345-404). That decision became defendant's final determination upon denial of review by the Appeals Council on March 20, 2007. (Tr. 274-76.)

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant met the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and was insured for benefits only through December 31, 2005.

2. The claimant has not engaged in substantial gainful activity since the March 4, 1999 alleged onset of disability.

3. The claimant has a left shoulder and neck strain, an anxiety/depression impairment, and neck radiculopathy. These impairments are considered "severe".

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. Claimant's allegations regarding his limitations are not totally credible.

6. The claimant has the residual functional capacity for a full range of work with the limitations set out in the body of the prior decision and in Exhibit 11E.

7. The claimant is unable to perform any of his past relevant work.

8. The claimant is a "younger individual," age 18-44, who has more than a high school education.

4

9. The claimant's limitations do not prevent him from making a successful adjustment to work that exists in significant numbers in the economy. A finding of "not disabled" is therefore reached within the framework of Medical-Vocational Rule 201.28.

10. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of last insured of December 31, 2005. (20 CFR § 404.1520(f)).

11. There is evidence in the record indicating that the claimant has received Worker's Compensation payments after the alleged onset date.

(Tr. 20.)

The ALJ concluded that plaintiff was not entitled to a period of disability or disability insurance benefits. (Tr. 294.)

On appeal, plaintiff argues that the ALJ committed numerous vocational errors.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

**III.**

Plaintiff contends that the ALJ's decision was not supported by substantial evidence because the jobs identified by the VE, based on the plaintiff's RFC, were inconsistent with their skill and exertional requirements described in the Dictionary of Occupational Titles ("DOT"). Specifically, plaintiff maintains that because the ALJ used GRID Rule 201.28, he limited him to unskilled, sedentary work – and he could not perform the night security guard or parking lot attendant jobs because, according to the DOT, these jobs were light exertional jobs, and he could not perform the clerical job because the DOT described it as semi-skilled. Plaintiff's contentions are not well-taken.

Pursuant to Social Security Ruling 00-4p, the ALJ is obligated to resolve any conflicts between a VE's testimony regarding jobs that a claimant can perform and the DOT's description of what is required to perform the jobs identified:

> Resolving Conflicts in Occupational Information
>
> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable

> explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. *At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.*
>
> Neither the DOT nor the VE . . . evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

Social Security Ruling 00-4p (December 4, 2000)(emphasis added). The Social Security Ruling also squarely places the obligation on the ALJ to ask the vocational expert about conflicts:

> The Responsibility to Ask About Conflicts
>
> When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> - Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> - If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

Social Security Ruling 00-4p (December 4, 2000).

Here, Janice Bending, the vocational expert (the "VE"), testified at the hearing. (Tr. 333, 353-401). The VE testified about her credentials and experience, and she considered the DOT requirements and other data sources. (*See* Tr. 376-401). The ALJ asked the VE to consider a hypothetical person with plaintiff's vocational characteristics, who could perform work with limitations consistent with the residual functional capacity. (Tr. 367-68, 372, referring to Tr. 115-16, 135).[1]

The VE initially stated that the hypothetical person could perform work as a sedentary, unskilled office clerk (60,500 national jobs), but after being asked to consider possible conflicts with the DOT, the VE reduced the numbers of sedentary, unskilled office clerk jobs, with a Specific Vocational Preparation ("SVP") of 2, to 20,000 national jobs. (Tr. 372-79, 382). The VE further testified that given the limitations in the hypothetical question, the individual could perform work as a light, unskilled (SVP of 2), night security guard (30,000 national jobs). (Tr. 388-92). The VE also identified light, unskilled (SVP of 2) parking lot attendant with minimal public contact jobs (420,000 national jobs, reduced by one-half) consistent with the limitations in the hypothetical question. (Tr. 392-95).

---

[1] The ALJ provided a typewritten copy of plaintiff's "residual functional capacity for a full range of work, with only the limitations checked," and referenced exhibits by the limitations. (Tr. 115-16). The ALJ found that plaintiff could perform a routine, and repetitive job; was impaired but not precluded from performing activities within a schedule, maintaining regular attendance, and being punctual; could not work as a part of close-knit work team but must do his own work in his own work station, there would be other people around, but he must just be doing his own thing; was impaired but not precluded from completing a normal workday and workweek without interruptions for psychologically based symptoms and performing at a consistent pace; could not work directly with the general public; could not perform a job that was "normally closely and intensely" supervised after he first learned the job; and required a job that was not inherently, highly stressful. (Tr. 115). The ALJ noted that plaintiff was right-handed and had the limitations as set forth in Exhibit 4F, page 5. (Tr. 115).

Although plaintiff contends that the jobs identified by the VE were inconsistent with their skill and exertional requirements as described in the DOT, the ALJ clearly inquired into whether the jobs identified by the VE in response to the hypothetical question were consistent with the DOT, and the VE testified at length as to this issue. (*See* Tr. 376-401).

Furthermore, the jobs identified by the VE were not inconsistent with the ALJ's RFC finding. Here, the ALJ's RFC finding limited plaintiff to lifting up to 10 pounds, which would fall within the exertional definition of sedentary work. *See* 20 C.F.R. § 404.1567(a) ("Sedentary" work involves lifting no more than ten pounds at a time.). Yet, the ALJ also limited plaintiff to standing/walking 6 ½ to 8 hours in an 8-hour work day and sitting for 5 ½ to 8 hours in an 8-hour work day, thus corresponding to the standing/walking requirements of "light" work (Tr. 115, 135).

The VE testified that a hypothetical person, with the above-noted standing/walking limitations and lifting restrictions, could perform work within the categories of the night security guard and parking lot attendant positions. (Tr. 388-95). Plaintiff does not dispute the work-related limitations posed in the hypothetical question. Thus, contrary to plaintiff's assertions, the night security guard and/or parking lot attendant jobs are consistent with the ALJ's RFC finding and hypothetical question.

*ii.*

Plaintiff further contends that the office clerk job has a specific vocational preparation (SVP) level of three, which is considered semi-skilled work. (Pl. Br. at 4). However, Plaintiff fails to note that the VE specifically testified that the office clerk jobs she identified were unskilled and had an SVP of 2, which is considered unskilled. (Tr. 376-79, 382); *see* SSR 00-04p.

Alternatively, plaintiff argues that even if the he could perform the office clerk job, such a position does not exist in significant number in the economy. Here, the VE testified that there are 20,000 sedentary unskilled office clerk jobs in the national economy, and 100 locally. (Tr. 379.)

The Sixth Circuit has noted that there is no "magic number" in evaluating whether work exists in significant numbers. *See Hall v. Bowen,* 837 F.2d 272, 274-75 (6th Cir. 1988) (finding that 1350-1800 jobs in the region is a significant number). Accordingly, in *Hall*, the Court stated:

> A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.

*Hall*, 837 F.2d at 275.

According to the Sixth Circuit, the determination of what constitutes a significant number of jobs is determined on a case-by-case basis considering the claimant's factual situation. *West v. Chater*, 1997 WL 76507 (S.D. Ohio Aug. 21, 1997) at 3 (citing *Born v. Sec'y of Health and Human Servs.*, 923 F.2d 1168, 1174 (6th Cir. 1990)). In this case, the ALJ's conclusion that plaintiff, given his RFC and vocational characteristics, could perform a significant number of jobs is consistent with case law. *See Stewart v. Sullivan*, 1990 WL 75248, *3 (6th Cir. June 6, 1990) (125 jobs in local area was significant number) (citation omitted)).

In conclusion, the ALJ's findings were supported by substantial evidence and within his "zone of choice."

This concludes the pertinent part of the Report and Recommendation.

### *De Novo* **Review**

Judicial review of the defendant's decision is limited in scope by 42 U.S.C. § 405(g). The Court's sole function under the statute is to determine whether there is substantial evidence to support the defendant's findings of no disability. The defendant's findings should stand if, after a review of the record in its entirety, the Court finds that the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Kirk v. Sec. of HHS*, 667 F.2d 524, 535 (6th Cir. 1981), **cert. denied, 461 U.S. 957 (1983); *Mullen v. Sec. of HHS*, 800 F.2d 535 (6th Cir. 1986).**

Once again the ALJ's denial decision at step five of the sequential evaluation process is before the Court.

In July 2005 this Court issued a remand order for further proceedings which provided in pertinent part:

> The ALJ is to provide an analysis regarding the inconsistencies regarding the definitions of bookkeeper and mail clerk as provided in the DOT and the VE's own personal observation. Additionally, the ALJ is to determine the later medical evidence offered by Plaintiff concerning his left shoulder and hand and determine whether Plaintiff is disabled as contemplated by the Act and whether he is entitled to benefits.

(Tr. 298-326.)

The ALJ held in response to the order of remand that the first issue remanded by this Court for the consideration of the ALJ has became moot. This remand issue was ignored according to the ALJ because a different vocational expert testified at the supplemental hearing on March 16, 2006. The ALJ recognized the obligation to follow the second instruction in the remand order "to determine (sic) the later medical evidence offered" by the claimant. Accordingly the ALJ incorporated in his decision the discussion and analysis of the medical evidence of record he set forth in the prior denial decision and found that the plaintiff offered no later medical evidence since the prior denial decision, that plaintiff's daily activity sheet and testimony introduced at the supplemental hearing added no new helpful information, that plaintiff has the same work-related limitations reflected on the residual functional capacity

assessment the ALJ set forth in the prior decision, and that plaintiff is precluded from performing his past relevant work.

The vocational expert testified that plaintiff could perform the jobs of sedentary unskilled office clerk, light unskilled night security guard and light unskilled parking lot attendant with minimal public contact.

The ALJ based the denial of disability on the fact that plaintiff is a "younger individual" who has more than a high school education, and that his limitations do not prevent him from making a successful adjustment to work that exists in significant numbers in the economy. The ALJ concluded that a finding of "not disabled" is therefore reached within the framework of Medical-Vocation Rule 201.28.

The plaintiff objects to the recommendation of the Magistrate Judge to affirm the decision of the ALJ that plaintiff's limitations do not prevent him from making a successful adjustment to work in jobs which exist in significant numbers in the economy, and that plaintiff is "not disabled" under the Social Security Law. Additionally plaintiff requests the Court to reverse the ALJ's decision and return the case to the defendant for the award of benefits.

The plaintiff's specific reasons for his objections and request are 1) The ALJ's residual functional capacity limited him exclusively to sedentary jobs not the light work jobs recommended by the Magistrate Judge, 2) Plaintiff was limited to a lifting limitation of 10 pounds, 3) Plaintiff could only perform the one sedentary unskilled

job of office clerk of which there are 20,000 such jobs in the United States, 4) 20,000 jobs in the United States are not a significant number of jobs in the national economy, therefore the ALJ has not met his step five burden of showing other work for Mr. Dorn, 5) Plaintiff has undergone two hearings before the ALJ and has proven he cannot do his past work or other work. 6) The proof of disability is strong and the proof to the contrary is not.

The defendant has not responded to plaintiff's objections, or plaintiff's request to return the case to the defendant for the award of benefits. Plaintiff's objections, reasons for relief, and plaintiff's request are uncontroverted.

Upon *de novo* review pursuant to the foregoing, the recommendation of the Magistrate Judge is modified.

The decision of the defendant concluding that plaintiff is not entitled to a period of disability or disability insurance benefits under Sections 216(i) and 223 of the Social Security Act is reversed and the case is remanded to the defendant for the award of benefits under 42 U.S.C. § 405 (g) of the Social Security Act, as amended.

This case is Terminated on the docket of this Court.

IT IS SO ORDERED.

                                                  s/Herman J. Weber
                                                  Herman J. Weber
                                          United States District Judge